IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| TYLER BRANSON HANE,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW SAUL,<br>Commissioner of Social Security<br><br>Defendant. | CV 20-112-DLC-KLD<br><br><br>FINDINGS AND<br>RECOMMENDATIONS |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq.

I. **Procedural Background**

Plaintiff filed an application for disability insurance benefits and supplemental security income on May 26, 2016, alleging disability since November 2, 2015, based on physical and mental impairments. (Doc. 21 at 18). Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. (Doc. 21 at 18-30). The Appeals Council denied the

1

Claimant's request for review on May 26, 2020, thereby making the ALJ's decision dated July 9, 2019, the agency's final decision for purposes of judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II. Legal Standards

### A. Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. See *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to

the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

### B. Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) he suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). See also *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, she must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation processes.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

### III. Discussion

The ALJ followed the five-step sequential evaluation process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2022. The ALJ further found Plaintiff had not engaged in substantial gainful activity since November 2, 2015 (20 CFR 404.1571 *et seq.*). (Doc. 21 at 24).

At step two, the ALJ found Plaintiff had the following severe impairments: (1) anterolisthesis of the lumbar spine; (2) status post fracture of cervical vertebra; (3) status post rotator cuff repair; (4) neurocognitive disorder due to traumatic brain

injury; (5) adjustment disorder with anxious and depressed mood; (6) panic disorder; and (7) post-traumatic stress disorder (PTSD). 20 CFR 404.1520(c). (Doc. 21 at 25). The ALJ further found that Plaintiff had some non-severe impairments such as headache, tinnitus, and visual impairments, which cause transient and mild symptoms, were well-controlled with treatment or otherwise not adequately supported by the medical evidence. (Doc. 21 at 25).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 21 at 25).

At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work as follows:

> [h]e can perform light work as defined in 20 CFR 404.1567(b), except the claimant can stand/ walk for only 4 hours in a 9-hour workday. He can only frequently use the right upper extremity for hand controls. He can no more than occasionally lift overhead with the right upper extremity, and overhead lifting must be limited to no more than 10 pounds. He can occasionally climb ramps or stairs. He can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, and crouch. He can never crawl. He can be exposed to no greater than moderate noise levels as defined in the Selected Characteristics of Occupational Titles ("SCO"). He can never be exposed to unprotected heights, moving machinery parts, or hazards in the workplace. The claimant is limited to a low stress work, defined as work involving understanding, remembering, and carrying out only simple, routine tasks, only simple work-related decisions, and no more than occasional changes in a routine work setting, and job duties. The claimant cannot perform high production or pace work but may have a quota as long as he can control the pace of work. He is limited to jobs requiring no more

than occasional reading with instructions given orally and with demonstration.

(Doc. 21 at 27).

The ALJ determined Plaintiff could not perform past relevant work as a stock clerk, data entry clerk, oil pumper, or oilfield equipment mechanic. (Doc. 21 at 32). Proceeding to step five, the ALJ found based on the vocational expert's testimony that there were jobs existing in significant numbers in the national economy that Plaintiff could perform such as garment folder, assembler, and typing machine operator. (Doc. 21 at 33).

Plaintiff argues the ALJ decision is not supported by substantial evidence and raises three main issues on appeal. First, Plaintiff argues the ALJ erred when she found Plaintiff does not have impairments that met the severity of impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. Second, Plaintiff contends the ALJ improperly discounted Plaintiff's testimony concerning his pain and limitations. Finally, Plaintiff argues the ALJ erred by concluding Plaintiff can perform work on a regular and continuing basis. (Doc. 26 at 3).

### A. <u>Listings</u>

Plaintiff argues the ALJ erred by failing to find that he met the criteria of Listing 1.04 and Paragraph B when considering if he was disabled. At step three in the sequential evaluation process, the ALJ must consider whether the claimant's impairment, or combination of impairments, meets or equals an impairment listed

in 20 C.F.R. Pt. 404, Subpt. P, App. 1. "If the claimant meets or equals one of the listed impairments, a conclusive presumption of disability applies." *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990).

To meet the requirements of a listing, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. §§ 404.1525(d) and 416.925(d). To demonstrate medical equivalence, the claimant must have impairments, considered alone or in combination, that are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a) and 416.926(a). The "ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 505, 512 (9th Cir. 2001). Nevertheless, the burden remains with the claimant, who must present medical evidence that her impairments meet or medically equal all of the criteria of a listed impairment. *Tackett v. Apfel*, 4180 F.3d 1094, 1099 (9th Cir. 1999). The claimant's symptoms "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir.1995).

### i. Listing 1.04

Plaintiff contends the ALJ discounted medical evidence Plaintiff has a compromised nerve root, which would end the inquiry at step three. 20 CFR 404, Appendix 1.04; (Doc. 26 at 15). To meet or equal the requirements of Listing 1.04,

a claimant must establish the presence of a spinal disorder "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" with at least one of the following: evidence of nerve root compression (paragraph A); spinal arachnoiditis (paragraph B); or lumbar spinal stenosis resulting in the inability to ambulate effectively (paragraph C). 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. The listing Plaintiff must meet is stated in Paragraph A:

> "Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."

To establish and discount disability under listing 1.04, both parties discuss an MRI from 2016. Plaintiff points out that Dr. Carter Beck found compression of the L5 nerve roots. (Doc. 26 at 15). The record states, "Since I last saw Tyler, he has undergone an MRI scan of the lumbar spine. As expected, this MRI scan of the lumber spine demonstrates an L5- S1 lumbar spondylolysis with spondylolisthesis and severe bilateral compression of the L5 nerve roots." (Doc. 21 at 445). Dr. Beck's opinion recommended a posterior lumbar interbody fusion at L5- S1. (Doc. 21 at 445). Instead, Plaintiff decided to undergo bilateral L5/S1 transforaminal epidural steroid injections from Dr. Christopher Caldwell (Doc. 21 at 493).

When the record reflects evidence of compromise, but the Plaintiff does not meet all the required listings in 1.04, the Plaintiff is not disabled at step three.

*Kallenbach v. Berryhill*, 766 F. App'x. 518, 520 (9th Cir. 2019). While there was evidence of nerve root compression, which is part of the listing, Plaintiff has failed to demonstrate he meets the requirements of Paragraph A of listing 1.04 in their entirety. Jennifer Brewington, PA-C found that Plaintiff has normal muscle tone and strength and was able to ambulate, had a normal range of motion in all directions, and had normal reflexes. (Doc. 21 at 29 and 442). Further, Plaintiff never had a positive straight leg test, which a requirement of listing 1.04. (Doc. 21 at 490, 518). The medical records do not address nor establish all the criteria required to establish the impairments equal to the requirements of any subsection of listing 1.04. Therefore, the ALJ did not err in determining Plaintiff did not meet the 1.04 listing requirements.

        ii. Listings 12.02, 12.04, 12.06, and 12.15

Plaintiff contends that the ALJ erred because he suffers from mental disorders that meet or equal listings 12.02, 12.04, 12.06, and 12.15. (Doc. 26 at 16). To meet the requirements of a listing, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). The criteria listed in Paragraphs B and C of these listings "describe the functional limitations associated with the [mental] disorder which are incompatible with the ability to work." *Holohan v. Massanari*, 246 F.3d 1195, 1204 (9th Cir. 2001).

The Paragraph B criteria requires that a claimant's mental impairment result in extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; (4) adapt or manage oneself. 20 C.F.R Pt. 404, Subpt. P, App.1 §§ 12.02B, 12.04B, 12.06B, 12.08B, 12.11B. If the Paragraph B criteria are not met, the ALJ can alternatively consider the functional limitations of the Paragraph C criteria. The Paragraph C criteria requires: a "serious and persistent" mental disorder with a "medically documented history" of at least two years, and evidence of (1) ongoing medical treatment that diminishes the symptoms and signs of your disorder; and (2) marginal adjustment, meaning the claimant has "minimal capacity to adapt to changes in [their] environment or to demands that are not already part of [their] daily life." 20 C.F.R. § 404, Subpt. P. App. 1 §§ 12.02C, 12.04C, 12.06C.

The ALJ considered the Paragraph B criteria and found Plaintiff's mental impairments did not cause at least two 'marked limitations' or one 'extreme' limitation." Plaintiff argues the ALJ improperly discounted the following limitations when assessing the paragraph B criteria: (1) his history of head injuries (Doc. 21 at 460); (2) bipolar disorder and attention deficit from multiple traumatic brain injuries (TBI) (Doc. 21 at 354); (3) memory loss of his car accident (Doc. 21 at 533); (4) memory variability and loss (Doc. 21 at 465, 517); (5) anxiety and

11

mood swings with symptoms such as headache, neck pain, low back pain, mental stamina, and efficiency of processing information (Doc. 21 at 464); and (6) adjustment disorder, panic disorder, and PTSD (Doc. 21 at 512). Plaintiff also discussed his fear of crowds in stores, inability to drive long distances, interact with other people, and complete simple tasks. (Doc. 26 at 17-20). A review of the ALJ's decision reveals the ALJ did address these findings and limitations in her determinations.

The ALJ considered Plaintiff's mental health limitations and found Plaintiff is mildly limited in understanding, remembering, or applying information because his tests showed good memory skills as well as the ability to prepare meals, keep appointments, shop online and drive. (Doc. 21 at 24, 26, 462-65, 234-238, 545). The ALJ found that Plaintiff has a mild limitation regarding interacting with others. (Doc. 21 at 26). The ALJ pointed to instances of Plaintiff visiting friends and family, getting along with medical providers, and traveling to Seattle. (Doc. 21 at 26). The ALJ found Plaintiff had moderate limitations in his ability to concentrate, persist, or maintain pace, because Plaintiff can drive, prepare meals, and order groceries and supplies online, but may have trouble with detailed tasks. (Doc. 21 at 26). Next, the ALJ determined Plaintiff has a moderate limitation in adapting and managing himself because he can take care of his hygiene and there is no evidence of emotional outbursts. (Doc. 21 at 26). This Court finds the ALJ

did not discount the various impairments listed in Plaintiff's brief, but that the ALJ properly considered these impairments when assessing the paragraph B requirements.

When discussing Plaintiff's mental impairments in her opinion, the ALJ highlighted Plaintiff's 2016 visits with John R. Harrison, Ph.D. to justify her findings. The ALJ explained that Plaintiff's attitude and rapport were good, and he showed good concentration, persistence, and effort across the tasks he was asked to perform. (Doc. 21 at 29). The ALJ noted that the tests performed by Dr. Harrison showed Plaintiff's verbal abilities were strong, and there was no indication of difficulty with word meanings or naming. (Doc. 21 at 29). The ALJ found the records of the tests illustrated decline in visual processing and executive functioning inefficiencies, but Plaintiff's problem-solving skills appeared intact. (Doc. 21 at 29). The ALJ determined that there is some variability in Plaintiff's memory and learning abilities as well. (Doc. 21 at 29). The ALJ found the record showed Plaintiff making significant strides in recovering from his TBI. The ALJ properly considered the opinions and findings of Plaintiff's treating mental health providers and provided legally sufficient reasons for not finding Plaintiff disabled at step three.

### B. <ins>Subjective Symptom Testimony</ins>

Plaintiff argues the ALJ did not provide clear and convincing reasons for discrediting his testimony regarding his limitations. The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of his symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

Here, the ALJ found that Plaintiff met his initial burden because he produced evidence of medically determinable impairments that could reasonably be expected to cause his alleged symptoms. (Doc. 21 at 24). The ALJ then found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence in the record. (Doc. 21 at 25).

At his administrative hearing, Plaintiff testified that he had trouble with reading, memory, mental stamina, as well as anxiety and PTSD. (Doc. 21 at 41-

53). He also testified to being in constant pain from his back and neck, as well as migraine headaches. (Doc. 21 at 41-53).

The ALJ provided a detailed summary of the medical evidence and discounted Plaintiff's testimony as to the severity of his physical and mental impairments for various reasons. The ALJ noted that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent with the record because Plaintiff scored highly on neuropsychological examinations and was responding well to treatment of his back. The ALJ further discounted Plaintiff's allegations because he can engage in a wide range of daily activities, including housework, shopping, driving, traveling, and visiting friends. (Doc. 21 at 30-31).

With respect to Plaintiff's mental limitations, the ALJ noted that Plaintiff's neurological exams demonstrated good concentration, effort, and persistence across tasks. (Doc. 21 at 29). These finding were consistent with the findings from Plaintiff's neuropsychological evaluation with Dr. John Harrison, Ph.D., where Plaintiff presented strong verbal abilities, intact problem-solving skills, as well as normal working memory and attention. (Doc. 21 at 465). Dr. Harrison additionally noted that Plaintiff's test results are "optimistic just 4 months after his injury, but there will still be ongoing indications of reduced executive function, memory, and learning." (Doc. 21 at 465). The ALJ noted these difficulties, but further reiterated

15

the neuropsychological progress consistent with by Dr. Harrison's findings when discussing how Plaintiff scored highly on examinations and completed the Bridges program. (Doc. 21 at 29). Although Plaintiff complained of memory issues and severe anxiety, his providers noted he often had a good demeanor and was a "good historian." (Doc. 21 at 502, 506).

Although Plaintiff complained of debilitating back pain, the ALJ noted that Plaintiff had a full range of motion without evidence of spasm or tenderness. (Doc. 26 at 29). This was consistent with findings from Jamie Mashek, PA-C, that Plaintiff's steroid injections were providing good long-term relief. (Doc. 21 at 500). The ALJ noted that Plaintiff's later exams in 2017 showed a normal range of motion and normal strength, which failed to align with his allegations of severe back pain. (Doc. 21 at 30). This is consistent with records of Plaintiff telling Jennifer Brewington, PA-C that he "feels how he felt prior to his accident." (Doc. 21 at 558). Additionally, Plaintiff's back did not require further specialized treatment since his injections were helping his pain. (Doc. 21 at 30). The record is inconsistent with Plaintiff's pain allegations.

To further discount Plaintiff's testimony, the ALJ noted that Plaintiff's daily activities are inconsistent with his testimony. The ALJ discounted Plaintiff's testimony based on his abilities to complete household chores, take care of his hygiene, shop, travel, and visit friends. (Doc. 21 at 30). During his administrative

hearing, Plaintiff testified that he often does not leave the house when he can avoid due to anxiety in crowds and pain with driving. (Doc. 21 at 50-53). Yet, Plaintiff drove over 400 miles to Seattle, and did not complain of pain on the drive, only of anxiety in the city. (Doc. 21 at 554). Plaintiff's testimony of difficulty cooking and doing chores was inconsistent with his functional report where he stated he can cook, sweep, and do laundry. (Doc. 21 at 237). Further, in his functional report Plaintiff stated he enjoys getting out to walk and drive in the hills. (Doc. 21 at 238). The ALJ did not err when she found these statements inconsistent with Plaintiff's testimony that he cannot drive and struggles to take care of himself. The Court finds the ALJ provided clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's testimony regarding his neurological and physical symptoms.

### C. Residual Functional Capacity Assessment

Plaintiff argues the ALJ overlooked Plaintiff's anxiety, mood swings, abilities to interact with people, and problems with driving when determining his RFC. However, a review of the ALJ's decision reveals the ALJ considered these limitations and incorporated the findings into her decision. As discussed above, the ALJ offered a detailed analysis of the medical record, Plaintiff's allegations about his physical and mental impairments, and his testimony. As noted in these findings, the ALJ properly evaluated Plaintiff's anxiety and mental limitations at step three,

and appropriately worked these limitations in his RFC when limiting the claimant to a low stress work environment. Further, as discussed above, the ALJ properly discounted Plaintiff's testimony regarding his alleged difficulty driving. The Court finds the ALJ's RFC determination was free of error and based on substantial evidence in the record.

## IV.   Conclusion

For all the above reasons, IT IS RECOMMENDED that this Commissioner's decision is AFFIRMED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 9th day of March, 2022

_____
Kathleen L. DeSoto
United States Magistrate Judge