IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| TYLER BRANSON HANE,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social<br>Security,<br><br>　　　　　Defendant. | CV 20–112–M–DLC<br><br><br><br>ORDER |

　　　Before this Court is United States Magistrate Judge Kathleen L. DeSoto's Findings and Recommendations. (Doc. 30.) Judge DeSoto entered her Findings and Recommendations on March 9, 2022, recommending that Defendant Commissioner of Social Security's decision denying Plaintiff Tyler Branson Hane's application for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq., be affirmed. (Doc. 30 at 18.)

　　　Hane filed an objection to the Findings and Recommendations, and therefore, is entitled to *de novo* review of those findings to which he specifically objects. 28 U.S.C. § 636(b)(1). A proper objection must "itemize" each factual finding and recommendation to which objection is made, "identifying the evidence in the record the party relies on to contradict that finding . . . [and] setting forth the authority the party relies on to contradict that recommendation." D. Mont. L.R. 72.3(a). The Court reviews for clear error those findings and recommendations to

1

which no party objects.  *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981).  Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed."  *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (internal quotation marks omitted).

## PROCEDURAL BACKGROUND

On May 26, 2016, Hane filed an application for disability insurance benefits and supplemental security income under Title II of the Act alleging disability beginning November 2, 2015, based on physical and mental impairments.  (Doc. 21 at 22–23.)  On June 1, 2017, Hane's claim was denied for the first time, and then again upon reconsideration on January 30, 2018.  (*Id.* at 22.)  On July 9, 2019, following an administrative hearing, Hane's claim was denied by an Administrative Law Judge ("ALJ").  (*Id.* at 34.)  The Appeals Council denied Plaintiff's request for review on May 26, 2020, thereby making the ALJ's decision the Commissioner of Social Security's (the "Commissioner") final decision for purposes of judicial review.  (*Id.* at 5.)

Hane sought judicial review of the ALJ's decision by this Court pursuant to 42 U.S.C. § 405(g) by filing his Complaint on July 28, 2020.  (Doc. 1.)  Hane filed his Motion for Summary Judgment (Doc. 25) on July 7, 2021, seeking reversal of the Commissioner's final decision on the grounds that (1) the ALJ erred in finding Hane does not have impairments that meet the severity of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (2) the ALJ improperly discounted Hane's testimony concerning his pain and limitations; and (3) the ALJ erred in concluding

Hane can perform work on a regular and continuing basis. (Doc. 26 at 3.) Hane requested that the Court find him entitled to disability benefits, or in the alternative, remand the case for further proceedings. (*Id.* at 25–26.)

The Commissioner filed a reply brief on August 6, 2021, asserting that (1) the ALJ reasonably discounted Hane's allegations based on their inconsistency with the record and his treatment and activities, (Doc. 28 at 4–13); (2) the ALJ reasonably determined Hane's physical and mental impairments did not meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, (*id.* at 13–14); and (3) the residual functional capacity ("RFC") assigned by the ALJ was complete and supported by substantial evidence, (*id.* at 23). The Commissioner urged the Court to affirm the ALJ's determination that Hane is not disabled. (*Id.* at 24.)

Judge DeSoto found that the ALJ did not err in determining Hane did not meet the listing requirements with regard to his physical and mental impairments. (Doc. 30 at 10, 13.) Judge DeSoto also found that the ALJ provided clear and convincing reasons for discounting Hane's subjective symptom testimony, supported by substantial evidence in the record. (*Id.* at 17.) Finally, Judge DeSoto found that the ALJ did not err in determining Hane's RFC. (*Id.* at 17–18.) Therefore, Judge DeSoto recommended the Commissioner's decision be affirmed. (*Id.* at 18.)

On March 18, 2022, Hane filed a notice of objections, raising three objections to Judge DeSoto's Findings and Recommendations:

3

> The Magistrate Judge Erred in Finding Plaintiff Does Not Have Impairments that Meet the Severity of Impairments Listed in 20 CFR Part 404, Subpart P, Appendix 1.

(Doc. 31 at 2.)

> The [Magistrate Judge] Improperly Discounted Plaintiff's Testimony Concerning His Pain and Limitations.

(*Id.* at 7.)

> The Magistrate Judge Erred in Adopting the ALJ's Conclusion That Plaintiff Can Perform Work on a Regular and Continuing Basis.

(*Id.* at 10.)

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of Social Security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). However, the Court may set aside the ALJ's decision "only if it is not supported by substantial evidence or is based on legal error." *Id.* In other words, the Court must affirm the ALJ's decision if it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006). Because the ALJ is "responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities," *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020), the Court must uphold the ALJ's decision "where evidence is susceptible to more than one rational interpretation," *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## DISCUSSION

To qualify for disability benefits under the Act, a claimant bears the burden of proving that (1) he suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), (d)(2)(A); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193–94 (9th Cir. 2004). Work that exists in the national economy includes work that exists in significant numbers in the region where the claimant lives as well as work that exists in several regions of the country. *Id.* § 423(d)(2)(A).

In determining whether a claimant is disabled within the meaning of the Act, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. At steps one through four, the claimant bears the burden of establishing disability. *Burch*, 400 F.3d at 679.

At step one, the ALJ considers whether the claimant is engaged in "substantial gainful activity." *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the answer is yes, then the claimant is not disabled—ending the analysis. If the answer is no, then the ALJ proceeds to step two.

At step two, the ALJ determines whether the claimant has any impairments—singly or in combination—that qualify as severe under the applicable regulations. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ

finds that the claimant has one or more severe impairments, the ALJ proceeds to step three.

At step three, the ALJ compares the claimant's impairments to the impairments listed in the applicable regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet the requirements of a listing, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." *Id.* §§ 404.1525(d), 416.925(d). If the ALJ finds that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is disabled—ending the analysis in the claimant's favor. If the claimant's impairments do not meet or equal a listed impairment, the ALJ proceeds to step four.

At step four, the ALJ considers whether the claimant retains the RFC to perform his past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The RFC is an assessment of the work-related physical and mental activities the claimant can do on a regular and continuing basis despite his limitations. *Id.* §§ 404.1545(b)–(c), 416.945(b)–(c). If the claimant establishes an inability to engage in past work, the ALJ proceeds to step five.

At step five, the burden shifts to the Commissioner to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The ALJ can satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. Part 404, Subpart P,

Appendix 2. If the ALJ satisfies this burden at step five, the claimant is not disabled.

### A.    Steps one and two

The ALJ followed the five-step evaluation process in evaluating Hane's claim. At step one, the ALJ found Hane had not engaged in substantial gainful activity since November 2, 2015. (Doc. 21 at 24.) Moving on to step two, the ALJ found Hane had seven impairments that qualified as severe under the applicable regulations: (1) anterolisthesis of the lumbar spine; (2) status post fracture of cervical vertebra; (3) status post rotator cuff repair; (4) neurocognitive disorder due to traumatic brain injury; (5) adjustment disorder with anxious and depressed mood; (6) panic disorder; and (7) post-traumatic stress disorder (PTSD). (*Id.* at 25.)

Because Hane did not object to Judge DeSoto's Findings and Recommendations upholding the ALJ's determinations at steps one and two, the Court reviews these for clear error. Finding none, the Court adopts them in full.

### B.    Step three

In his Motion for Summary Judgment, Hane argued that the ALJ discounted medical evidence showing that Hane has a compromised nerve root, a manifestation of the impairment listed at 1.04 (disorders of the spine) under 20 CFR Part 404, Subpart P, Appendix 1. (Doc. 26 at 15.) In her Findings and Recommendations, Judge DeSoto found that Hane had failed to demonstrate he meets the applicable requirements of listing 1.04 in their entirety, so the ALJ did not err in determining Hane did not meet the 1.04 listing requirements. (Doc. 30 at

10.) Hane did not object to this finding, so the Court reviews for clear error. Finding none, the Court adopts this aspect of Judge DeSoto's Findings and Recommendations in full.

However, in contrast to the question of physical disability, Hane does object to Judge DeSoto's finding regarding the question of a mental impairments. (Doc. 31 at 4–5.) Judge DeSoto found that the ALJ did not err in determining Hane fails to meet or equal the listings for mental disorders under 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders). (Doc. 30 at 10–13.)

To meet the requirements of a listing, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). In addition to providing medical documentation of specified symptoms as required by Paragraph A under each listed disorder, the claimant must also meet the criteria of either Paragraph B or Paragraph C under each listing. Paragraph B requires that the claimant show an extreme limitation of one—or *marked* limitation of two—of the following areas of mental functioning: (1) interacting with others; (2) concentration, persistence, or maintaining pace; (3) understanding, remembering, or applying information; and (4) adapting or managing oneself. 20 C.F.R Part 404, Subpart P, Appendix 1 §§ 12.02B, 12.04B, 12.06B, 12.15B.

As an alternative to satisfying the criteria in Paragraph B, the Paragraph C criteria require that the mental disorder be "serious and persistent." *Id.* §§ 12.02C,

12.04C, 12.06C, 12.15C. This standard requires a medically documented history of the disorder's existence over a period of at least two years, along with evidence of both of the following: (1) reliance on medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and diminishes the symptoms and signs of the disorder, and (2) minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life—referred to as "marginal adjustment." *Id.*

Hane specifically objects to Judge DeSoto's findings upholding the ALJ's determination that Hane failed to satisfy the requirements for Paragraph B in those four listings at 12.02, 12.04, 12.06, and 12.15. (Doc. 31 at 2.) Of the four areas of mental functioning listed in Paragraph B and referenced above, Hane argues that he has a marked limitation of two—(1) interacting with others, and (2) concentration, persistence, or maintaining pace—and therefore, satisfies the Paragraph B requirements of each of the four listings. (*Id.* at 4, 6.)

A *marked* limitation in any area of mental functioning requires that the claimant is "seriously limited" in functioning independently, appropriately, effectively, and on a sustained basis in that area. 20 C.F.R Part 404, Subpart P, Appendix 1 § 12.00F(2). In contrast, a *mild* limitation means the claimant's functioning is "slightly limited," and a *moderate* limitation means the claimant's functioning is "fair." *Id.*

    1.    **Interacting with others.**

The first of these areas of mental functioning—interacting with others—refers to "the abilities to relate to and work with supervisors, co-workers, and the

public." *Id.* § 12.00E(2).  Examples include when the claimant is able to (1) cooperate with others; (2) ask for help when needed; (3) handle conflicts with others; (4) state their own point of view; (5) initiate or sustain conversation; (6) understand and respond to social cues; (7) respond to requests, suggestions, criticism, correction, and challenges; and (8) keep interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.  *Id.*

Here, Hane asserts that he has problems getting along with others because "with the pain management side of things, it makes being around new people and things very difficult."  (Doc. 21 at 63.)  Hane also describes telling his brothers the same stories multiple times and having no idea that he had ever told them that story previously.  (*Id.*)  Hane illustrates his limitation in interacting with others with an instance of suffering panic attacks at a wedding and having to excuse himself every 10 to 15 minutes because of overstimulation from sounds and other people in attendance.  (Doc. 31 at 11.)

After considering evidence such as this, the ALJ found that Hane has only a *mild* limitation in his ability to interact with others, not a *marked* limitation.  (Doc. 21 at 26.)  The ALJ noted Hane's own reports and testimony indicating that he gets along well with family, friends, neighbors, authority figures, and others.  (*Id.*)  While the evidence illustrates that Hane has some limitation in his ability to interact with others, the Court agrees the evidence does not justify a conclusion that Hane is "seriously limited" in his ability to function independently, appropriately, effectively, and on a sustained basis in relating to and working with supervisors, co-workers, and the public.  The ALJ's determination—that Hane is

only slightly limited—is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark*, 454 F.3d at 1070. Therefore, the Court will not reverse the ALJ's finding that Hane lacks a marked limitation in interacting with others.

### 2. Concentrating, persistence, or maintaining pace.

The second of these areas of mental functioning—concentrating, persistence, or maintaining pace—refers to "the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R Part 404, Subpart P, Appendix 1 § 12.00E(3). Examples include when the claimant is able to (1) initiate and perform a task that they understand and know how to do; (2) work at an appropriate and consistent pace; (3) complete tasks in a timely manner; (4) ignore or avoid distractions while working; (5) change activities or work settings without being disruptive; (6) work with others or close to others without interrupting or distracting those people; (7) sustain an ordinary routine and regular attendance at work; and (8) work a full day without needing more than the allotted number or length of rest periods during the day. *Id.*

Here, Hane asserts that he has to minimize activities like cooking and laundry (Doc. 21 at 54), cannot mow the lawn or shovel snow, (*id.*), and limits his shopping to online only, as he struggles to handle the environment of stores like Walmart where children may scream and items may fall onto the ground, (*id.* at 55). The ALJ also noted neuropsychological testing that suggested Hane had limitations in more detailed or complex tasks. (*See id.* at 458–86.)

11

After considering evidence such as this, the ALJ found that Hane has a *moderate* limitation in his ability to concentrate, persist, or maintain pace, but not a *marked* limitation. (*Id.* at 26.) The ALJ considered that Hane performed in the average range for objective tests of attention and concentration, (*id.* at 462, 465), and that his mental status examinations have shown good rapport and attitude and normal concentration and attention, (*id.* at 490, 496, 502, 517). While the evidence illustrates that Hane has some limitation in his ability to concentrate, persist, or maintain pace, the Court agrees the evidence does not justify a conclusion that Hane is "seriously limited" in his ability to function independently, appropriately, effectively, and on a sustained basis to focus attention on work activities and stay on task at a sustained rate. The ALJ's determination—that Hane's functioning is fair—is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark*, 454 F.3d at 1070. Therefore, the Court will not reverse the ALJ's finding that Hane lacks a marked limitation in concentration, persistence, or maintaining pace.

In summary, the Court concludes the ALJ did not err in determining Hane fails to meet or equal the listings for mental disorders under 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders).

### C. Step four

Moving on to step four, the ALJ determined Hane did not retain the RFC to perform past relevant work as a stock clerk, data entry clerk, oil pumper, or oilfield equipment mechanic. (Doc. 21 at 32.) Because Hane did not object to Judge DeSoto's Findings and Recommendations upholding the ALJ's determinations at step four, the Court reviews these for clear error. Finding none, the Court adopts them in full.

### D. Step five

At step five, the burden to establish that Hane can perform other work that exists in significant numbers in the national economy—taking into consideration his RFC—shifts to the Commissioner. Based on the testimony of a vocational expert, the ALJ found there were jobs existing in significant numbers in the national economy that Hane could perform—specifically, "light, unskilled occupations" such as garment folder, assembler, and typing machine operator. (*Id.* at 33.) Hane objects to Judge DeSoto's adoption of these findings and argues that these conclusions overlook Hane's "persistent anxiety, mood swings, and subsequent impact on cognitive function, mental stamina, and efficiency of processing." (Doc. 31 at 11.) Hane cites the aforementioned difficulties attending a wedding and shopping at stores like Walmart as support for this argument, as well as problems he experiences driving long distances and handling traffic. (*Id.*)

13

In addition, Hane more broadly argues that the ALJ did not provide clear and convincing reasons for discrediting his testimony regarding his limitations, and that Judge DeSoto erred in upholding the ALJ's approach. (*Id.* at 7.)

In assessing the credibility of a claimant's testimony regarding subjective pain or symptoms, the ALJ must engage in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036 (internal quotation marks omitted). To satisfy the requirements of this first part of the analysis, the claimant need only show that his impairment "could reasonably have caused some degree of the symptom," not necessarily the full severity of the symptom alleged. *Id.* Second, if the claimant meets this initial burden, the burden shifts to the ALJ to discredit the claimant's testimony about the severity of his symptoms, which the ALJ can only do by offering "specific, clear and convincing reasons for doing so." *Id.*

Here, the ALJ found that Hane met his burden in the first part of the *Lingenfelter* analysis, because he produced evidence of medically determinable impairments that could reasonably be expected to have caused some degree of his alleged symptoms. (Doc. 21 at 28.) However, moving on to the second part of the *Lingenfelter* analysis, the ALJ found that Hane's statements concerning the

intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical evidence in the record.  (*Id.*)

First, regarding Hane's mental limitations, the ALJ noted that Hane's testimony was inconsistent with the objective record.  According to the ALJ, Hane's neurological exams demonstrated "good concentration, effort, and persistence across tasks."  (*Id.* at 29.)  For example, the neuropsychological evaluation conducted by Dr. John Harrison, Ph.D., found that Hane presented strong verbal abilities, intact problem-solving skills, and normal working memory and attention.  (*Id.* at 465.)   Dr. Harrison noted that the results of Hane's evaluation were "optimistic just 4 months after his injury," although he also noted that "there will still be ongoing indications of reduced executive function, memory, and learning."  (*Id.*)  Although Hane reported issues with memory and severe anxiety, his providers noted he often had a good demeanor and was a "good historian." (*Id.* at 506.)  While the ALJ acknowledged and considered Hane's ongoing difficulties, these findings evidencing neuropsychological progress provided specific, clear and convincing reasons to discredit Hane's testimony about the severity of his symptoms related to his mental limitations.

Second, regarding Hane's physical pain limitations, the ALJ found the record was similarly inconsistent with Hane's testimony.  Although Hane complained of debilitating back pain, Hane demonstrated a full range of motion,

15

normal strength and reflexes, and no evidence of spasm or tenderness in his examinations. (*See id.* at 442–43.) This is further supported by Hane's self-reporting to Jennifer Brewington, PA-C, that he "feels how he felt prior to his accident." (*Id.* at 558.) Apparently because his injections were helping his pain, Hane did not require further specialized treatment for his back or otherwise seek out additional medical care. (*Id.* at 30.)

As further support for the ALJ's determination, Hane's daily activities were inconsistent with his subjective symptom testimony. For example, Hane testified that he often does not leave the house due to anxiety in crowds and pain with driving, (*see, e.g.*, *id.* at 45, 55); but, Hane drove 400 miles to Seattle without any reported complaints of pain while driving, (*id.* at 554). Hane reported difficulty cooking and doing chores, but in his functional report, he stated he can cook, sweep, and do laundry. (*Id.* at 236.) Hane is able to complete household chores, take care of his pets, attend to his hygiene, shop, travel, and visit friends, (*id.* at 30), and he stated in his functional report that he enjoys going for walks and taking drives in the hills, (*id.* at 238). Thus, the ALJ provided specific, clear and convincing reasons, supported by substantial evidence, for discrediting Hane's testimony regarding the severity of his physical symptoms.

The Court concludes that the ALJ met the burden to establish that Hane can perform other work that exists in significant numbers in the national economy,

16

taking into consideration his RFC. Therefore, Hane is not disabled within the meaning of the Act.

## CONCLUSION

In summary, regarding Hane's first objection, the Court upholds the ALJ's finding at step 3 that Hane does not have impairments that meet the severity of impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. Regarding Hane's second and third objections, the Court upholds the ALJ's assessment of Hane's subjective symptom testimony and adopts the ALJ's conclusion at step 5 that Hane can perform work on a regular and continuing basis. Regarding all other components of Judge DeSoto's Findings and Recommendations that Hane does not object to, the Court finds no clear error.

Accordingly, IT IS ORDERED that Judge DeSoto's Findings and Recommendations (Doc. 30) are ADOPTED IN FULL. The Commissioner's decision is AFFIRMED, and this case is DISMISSED. The Clerk of Court shall close this matter and enter judgment in favor of the Commissioner pursuant to Rule 58 of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that Plaintiff Hane's Motion for Summary Judgment (Doc. 25) is DENIED as moot.

DATED this 7th day of December, 2022.

Dana L. Christensen, District Judge
United States District Court